# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PARALLEL ENERGY LP, *et al.*[1] | § | Case No. 15-_____ (__) |
| | § | (Joint Administration Requested) |
| Debtors. | § | |
| | § | <u>**Related D.I.:** _____</u> |

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 365, 503 AND 507 AND FED. R. BANKR. P. 2002, 6004, AND 6006 (A) ESTABLISHING BID AND AUCTION PROCEDURES FOR THE PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING THE PURCHASE AND SALE AGREEMENT; (C) APPROVING RELATED BID PROTECTIONS; (D) SCHEDULING AN AUCTION AND A SALE HEARING AND APPROVING NOTICE THEREOF; (E) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED AND NOTICE THEREOF; AND <u>(F) GRANTING RELATED RELIEF</u>**

Upon consideration of the *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 And 507 and Bankruptcy Rules 2002, 6004 and 6006 for (I) Entry of an Order (A) Establishing Bid and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (E) Granting Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the "Sale Motion")[2] of the above-

---

[1] The Debtors are Parallel Energy LP and Parallel Energy GP LLC.
[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Purchase and Sale Agreement between Scout Energy Group II, LP (the "Proposed Purchaser") and Parallel Energy LP (the "Purchase and Sale Agreement), as applicable.

1

captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and due and adequate notice of the Sale Motion having been given under the circumstances; and upon the record of the hearing on the Sale Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED:**[3]

A.    This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Purchase and Sale Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the Sale Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein.

C.    A reasonable opportunity to object or to be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    The notice proposed by the Debtors is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the relief sought in the Sale Motion.

E.    The Purchase and Sale Agreement represents the best offer the Debtors have received as a result of their pre-petition efforts to market the Property.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.      No party, to date, has offered to enter into an agreement for the purchase of the Property on terms acceptable to the Debtors other than the Proposed Purchaser, as set forth in the Purchase and Sale Agreement.  The execution of the Purchase and Sale Agreement is a necessary prerequisite to determining whether any party other than the Proposed Purchaser is willing to enter into a definitive agreement for the acquisition of the Property on terms acceptable to the Debtors and their creditor constituencies.

G.      The Debtors have articulated good and sufficient business reasons for this Court to approve: (a) the Bid Procedures; (b) the scheduling of a bid deadline, Auction and Sale Hearing with respect to the proposed sale of the Property; (c) payment of the Break-Up Fee and Expense Reimbursement under the terms and conditions set forth in the Purchase and Sale Agreement; and (d) the establishment of procedures to fix the Cure Amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of certain executory contracts and unexpired nonresidential real property leases (the "Designated Executory Contracts").

H.      The Bid Procedures are reasonably designed to maximize the value to be obtained for the Property.

I.      Each of the Break-Up Fee and the Expense Reimbursement is: (a) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (b) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser; (c) reasonable and appropriate in light of the size and nature of the proposed sale, comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Proposed Purchaser; and (d) necessary to induce the

Proposed Purchaser to continue to pursue the purchase of the Property and to be bound by the Purchase and Sale Agreement.

J.      The assurance of the payment of the Break-Up Fee and Expense Reimbursement: (a) will promote more competitive bidding by inducing the Proposed Purchaser's bid, which otherwise would not have been made and which may be the highest and/or best available offer for the Property; (b) induced the Proposed Purchaser to, conduct extensive due diligence and propose the transaction, including, among other things, submission of a bid that will serve as a minimum bid on which all other bidders can rely; and (c) will provide a benefit to the Debtors' estates by increasing the likelihood that the price at which the Property is sold will reflect market value.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The request for entry of the Bid Procedures Order is **GRANTED** as provided herein.

2.      All objections to the request for entry of the Bid Procedures Order or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

**Approval of the Purchase and Sale Agreement and Bid Procedures**

3.      Immediately upon entry of this Order, the Purchase and Sale Agreement shall be binding upon the parties thereto in accordance with its terms.

4.      The Bid Procedures, in substantially the form attached hereto as **Schedule 1**, are incorporated herein, approved in their entirety and shall apply with respect to the sale of the Property.  The Debtors are authorized to take all actions incidental, necessary and appropriate to implement the Bid Procedures.

518185 000003 16143342.18

5.      The Break-Up Fee and Expense Reimbursement are approved in their entirety.  The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall be allowed as administrative expense claims pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, in the event of a Topping Sale Transaction the Break-Up Fee and Expense Reimbursement shall constitute administrative expense claims under Section 503(b) or 507(a)(2) of the Bankruptcy Code with priority over any and all administrative expenses of a kind specified in sections 503(b)(1) and 507(a) of the Bankruptcy Code and senior to all other superpriority administrative expenses in these Chapter 11 Cases, and (ii) in the event of an Alternative Transaction that is not a Topping Sale Transaction, or in the event no Alternative Transaction is consummated, constitute administrative expense claims under Section 503(b) or 507(a)(2) of the Bankruptcy Code with priority over any and all administrative expenses of a kind specified in sections 503(b)(1) and 507(a) of the Bankruptcy Code, but junior to (A) the superpriority administrative claims granted to the DIP Secured Parties pursuant to Section 364(c)(1) of the Bankruptcy Code, and (B) the superpriority administrative claims granted to the Administrative Agent and the Pre-Petition Lenders pursuant to Section 507(b) of the Bankruptcy Code, in each case, in accordance with the terms of any DIP Orders.

6.      The Break-Up Fee and Expense Reimbursement shall be paid to the Proposed Purchaser pursuant to the terms and conditions set forth in the Purchase and Sale Agreement without need for further order of the Court; *provided, however*, this Court shall retain jurisdiction to hear any dispute with respect to the Proposed Purchaser's entitlement to the Break-Up Fee or Expense Reimbursement pursuant to the terms Purchase and Sale Agreement.

518185 000003 16143342.18

7.      Prior to payment on any request for Expense Reimbursement, the Administrative Agent, the Pre-Petition Lenders, and, to the extent a statutory committee of unsecured creditors is formed in these Chapter 11 Cases (the "Committee"), the Committee shall have three (3) business days to review and object to any request for such payment.  If such an objection is made, no payment on account of the disputed portion(s) of the Expense Reimbursement shall be made absent agreement of the parties or order of the Court.  Any uncontested portion of a request for Expense Reimbursement shall be paid to Proposed Purchaser immediately without further order of the Court.

8.      As further described in the Bid Procedures, the deadline for submitting bids for the Property (the "Bid Deadline") is _____ __, 2015, at ____:00 _.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualifying Bid (as defined in the Bid Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bid Procedures.  As set forth in the Bid Procedures, any Qualifying Bid shall provide sufficient cash to pay, in full, at closing, an amount equal to or greater than the aggregate of (a) the consideration offered for the Property in the Purchase and Sale Agreement, plus (b) the sum of the Break-Up Fee and Expense Reimbursement, plus (c) $375,000.00.

9.      The Debtors may conduct an Auction in accordance with the Bid Procedures.  If one or more Qualifying Bids are timely received by the Debtors in accordance with the Bid Procedures, the Auction shall take place on _____ __, 2015 at __:___ _.m. (prevailing Eastern Time), at the offices of Thompson & Knight, LLP, 1722 Routh Street, Suite 1500, Dallas, TX 75201, or such other place and time as the Debtors shall notify the Proposed Purchaser, any Qualifying Bidders (as defined in

the Bid Procedures), the Committee, and other invitees (as determined by the Debtors). If, however, no Qualifying Bid is received by the Bid Deadline, then the Auction will not be held, and the Debtors shall designate the Proposed Purchaser as the Prevailing Purchaser and seek Bankruptcy Court approval of the Purchase and Sale Agreement.

10.     At any Auction, Qualified Bidders must submit bids in cash increments of at least $375,000 or higher than the bid at which the Auction commenced, and then continue in minimum increments of at least $375,000 higher than the pervious bid, subject and as set forth in the Bid Procedures.

11.     Each Qualifying Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. All bidding activity at the Auction shall be transcribed, videotaped, or both.  The Auction will be conducted openly, and any of the Debtors' creditors will be permitted to attend.

**Scheduling of Sale Hearing and Related Notices**

12.     The Notice of Auction and Sale Hearing, substantially in the form attached as **Schedule 2** hereto (the "Notice of Auction and Sale Hearing"), is approved.

13.     The Sale Hearing shall be held before this Court on **_____ __, 2015 at __:___ _.m. (prevailing Eastern Time)**.

14.     Objections to the sale of the Property, or the relief requested in the Sale Motion, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, on or before **4:00 p.m. (prevailing Eastern Time) on _____ __, 2015** (the "Objection Deadline"); and (d) be served so as to be received by no later than the Objection

Deadline, on the parties identified in **Exhibit A** attached hereto (the "Notice Parties").
All objections must state with specificity the nature of such objection and will be heard
by the Court at the Sale Hearing.

15.     On or before five (5) days after entry of this Order, the Debtors will cause
the Notice of Auction and Sale Hearing and this Order to be sent by first-class mail
postage prepaid to all parties that were served with the Sale Motion.[4]

16.     In addition to the foregoing, electronic notification of this Sale Motion,
this Order and the Notice of Auction and Sale Hearing also will be posted on:  (a) the
Court's website at http://www.deb.uscourts.gov; and (b) the case website maintained by
Prime   Clerk   LLC,   the   Debtors'   proposed   claims   and   noticing   agent,   at
http://cases.primeclerk.com/parallel.

16.     No later than five (5) days after the entry of this Order, Evercore Group
L.L.C. ("Evercore"), proposed investment banker and financial advisor for the Debtors, is
instructed to contact all parties known or reasonably believed to have expressed an
interest in acquiring some or all of the Property within the last six months to the extent it
has not already contacted such parties during the post-petition period.

### Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases

17.     On or before five (5) business days after the entry of this Order, the
Debtors shall serve by first class mail, a notice of potential assumption, assignment
and/or transfer of the Designated Executory Contracts, substantially in the form attached

---

[4] The Notice of Auction and Sale Hearing will direct parties to contact Evercore Group L.L.C, proposed
investment banker and financial advisor for the Debtors, for more information and will provide that any
party in interest that wishes to obtain a copy of any related document (including the Purchase and Sale
Agreement), subject to any necessary confidentiality agreement, may make a request in writing as specified
in the Notice of Auction and Sale Hearing.

hereto as **Schedule 3** (the "Notice of Assumption and Assignment") on all non-debtor parties to the Designated Executory Contracts, *provided, however,* that the identification of a contract or lease in a Notice of Assumption and Assignment does not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.  The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and leases listed in a Notice of Assumption and Assignment.  The Notice of Assumption and Assignment shall identify whether a Designated Executory Contract is included as part of the Property and the cure amount(s) the Debtors assert, based on the Debtor's records, must be paid in order to cure defaults outstanding under each Designated Executory Contract to permit the Debtors to assume such contracts (the "Cure Amounts"), as of such date (the "Cure Date").  Additionally, if the Debtors identify additional executory contracts or unexpired leases that may be assumed by the Debtors and assigned to Proposed Purchaser not set forth in the original Notice of Assumption and Assignment, the Debtors may send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparty or counterparties to such additional executory contracts and unexpired leases.

18.    Unless the non-debtor counterparty to a Designated Executory Contract files an objection (the "Cure Amount/Assignment Objection") to any of (a) the Cure Amount relating to a Designated Executory Contract, or (b) the proposed assumption and assignment of a Designated Executory Contract **no later than three (3) days before the Auction** (collectively, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be actually received no later than the

Cure/Assignment Objection Deadline by the Notice Parties, then such non-debtor counterparty shall (a) forever be barred from objecting to the Cure Amount and asserting any additional cure or other amounts as of the Cure Date, with respect to a Designated Executory Contract, and the Debtors shall be entitled to rely solely upon the Cure Amount, and (b) if the Designated Executory Contract is  part of the Property, and the Proposed Purchaser is the Purchaser, be deemed to have consented to the assumption, assignment and/or transfer of such Designated Executory Contract to the Proposed Purchaser, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Proposed Purchaser or such other Purchaser or any other assignee of the relevant Designated Executory Contract that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Designated Executory Contract.

19.    If an objection challenges a Cure Amount, the objection must set forth the pre-petition cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.   Upon receipt of an objection to a Cure Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure Amount in reserve in an account with the Administrative Agent (in accordance with the provisions of the *Order Approving (A)Maintenance Pre-Petition Bank Accounts and Cash Management System and (B) Continued Use of Existing Checks and Business Forms* (the "Cash Management Motion") pending further order of the Court or agreement between the Debtors and the objecting party.  If the Debtors hold the Claimed Cure Amount in reserve, the Debtors may assume and assign the Designated Executory Contract subject to such objection without further delay.

20.     The Debtors or the Proposed Purchaser may determine to exclude any Designated Executory Contract (an "Excluded Contract") from the list of Property no later than the three (3) Business Days prior to the Sale Hearing.  The non-debtor party or parties to any such Excluded Contract will be notified of such exclusion by written notice mailed no later than the day that is one (1) Business Day after a Final Order determining the actions necessary to Cure or any request for adequate assurance of future performance.

21.     In the event that the Proposed Purchaser is not the Purchaser for the Property and for those Designated Executory Contracts identified in the Notice of Assumption and Assignment, immediately after the conclusion of the Auction for the Property, the Debtors will serve a notice identifying the Purchaser on the non-debtor counterparties to the Designated Executory Contracts identified by such Purchaser.  The non-debtor counterparties to such Designated Executory Contracts may, at or prior to the Sale Hearing, object to the assumption, assignment and/or transfer of such Designated Executory Contract to Purchaser solely on the issue of whether Purchaser can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  Any non-debtor party to a Designated Executory Contract that does not object to the assignment of its respective Designated Executory Contract shall be deemed to have consented to the assumption and assignment of such Designated Executory Contract to Purchaser.  Nothing in this paragraph shall extend or shorten or otherwise affect the Cure Amount/Assignment Objection Deadline.

22.     The Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Property, substantially in the form annexed hereto as **Schedule 3**, hereby is approved.

D.     **Other Provisions**

23.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on the agenda for the date scheduled for said hearing.

24.     Subject to the provisions of the Purchase and Sale Agreement, the Bid Procedures and this Order, the Debtors shall have the right, as they may reasonably determine in their business judgment, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is the highest and best bid and proposal and which is the next highest and best bid and proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some portion of the Property from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders and the Proposed Purchaser; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction or Sale Hearing in open court without further notice; (j) modify the Bid Procedures; and (k) withdraw the Sale Motion at any time, with or without prejudice.  For the avoidance of doubt, the Proposed Purchaser is a Qualifying Bidder and the transaction set forth in, and by virtue of, the Purchase and Sale Agreement, is a Qualifying Bid.

518185 000003 16143342.18

25.     Notwithstanding anything to the contrary in this Order or the Motion, any payment, obligations, or other relief authorized by this Order shall be subject to the terms, conditions, and limitations of the order of this Court approving any debtor in possession financing and cash collateral use, including any budget in connection therewith; provided however, this shall not prevent, limit, or restrict in any way the payment of the Break-Up Fee or Expense Reimbursement to the Proposed Purchaser pursuant to the terms and conditions of the Purchase and Sale Agreement and this Order.

26.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

27.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.


Dated: _____, 2015
        Wilmington, Delaware                    _____
                                                Judge ____
                                                United States Bankruptcy Judge

# EXHIBIT A

## Notice Parties

1) The Debtors' counsel, (a) Thompson & Knight LLP, One Arts Plaza, 1722 Routh Street, Suite 1500, Dallas Texas (Attn: David M. Bennett) and (b) Bayard P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE  19801 (Attn:  Neil B. Glassman);

2) The Debtors, Parallel Energy LP - U.S. Operating Office, Suite 200, 1323 East 71 Street, Tulsa, OK 74136 (Attn: Richard N. Miller);

3) Counsel to the proposed Purchaser, Winstead PC, 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201(Attn: Eli Columbus);

4) Counsel to Canadian Imperial Bank of Commerce, the Debtors' post-petition lender, (a) Latham & Watkins LLP, 885 Third Avenue, New York, New York, 10022 (Attn: Mitchell Seider) and (b) Blakes, Cassels & Graydon LLP, 855 – 2nd Street S.W., Suite 3500, Bankers Hall East Tower, Calgary, Alberta T2P 4J8, Attn: (Kelly Bourassa)

5) Counsel to any official creditors' committee appointed in these Chapter 11 Cases;

6) Evercore Group L.L.C, proposed financial advisor and investment banker to the Debtors, 909 Fannin Street Suite 1700 Houston, TX 77010 (Attn: Steven T. Becker); and

7) The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

# **Schedule 1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PARALLEL ENERGY LP, *et al.* | § | Case No. 15-_____ (__) |
| | § | (Joint Administration Requested) |
| Debtors. | § | |
| | § | |

---

## BID PROCEDURES

1.      By motion dated November __, 2015 [Docket No. _____] (the "<u>Motion</u>"), Parallel Energy LP ("<u>LP</u>") and Parallel Energy GP LLC (collectively, the "<u>Debtors</u>") sought approval, among other things, of the procedures by which they will determine the highest or otherwise best price for the sale (the "<u>Sale</u>") of substantially all of LP's assets (the "<u>Property</u>"), as described in the Purchase and Sale Agreement by and between Scout Energy Group II, LP (the "<u>Proposed Purchaser</u>") and Parallel Energy LP, dated as of November __, 2015 (the "<u>Purchase and Sale Agreement</u>"), a copy of which is attached to the Motion.

2.      On November __, 2015, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Bid Procedures Order</u>") that, among other things, authorized the Debtors to determine the highest or otherwise best bid for the Property through the process and procedures set forth below (the "<u>Bid Procedures</u>").  To the extent set forth in the Bid Procedures Order, the Debtors reserve the right to modify the Bid Procedures.

3.      On November __, 2015, the Bankruptcy Court entered an order (the "<u>Interim DIP Order</u>" [or the "<u>Final DIP Order</u>"] ) that, among other things, authorized the Debtors to obtain post-petition secured financing to continue their operations and preserve the value of the Property.

4.      Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion, Bid Procedures Order, the Purchase and Sale Agreement or the Interim DIP Order [or Final DIP Order], as applicable.

### A.      **Participation Requirements**

Any person that wishes to participate in the bidding process (each, a "<u>Potential Bidder</u>") must become a "<u>Qualifying Bidder</u>." As a prerequisite to becoming a Qualifying Bidder (and, thus, being able to conduct due diligence), a Potential Bidder:

- must deliver an executed confidentiality agreement in form and substance acceptable to the Debtors; and

- must be able, as determined by the Debtors, to consummate a purchase of the Property if selected as the successful bidder.

The Proposed Purchaser is deemed a Qualifying Bidder and the Purchase and Sale Agreement constitutes a Qualifying Bid (as defined below) for all purposes.

### B. Due Diligence

5. The Debtors shall afford Qualifying Bidders the time and opportunity to conduct reasonable due diligence. The due diligence period shall extend through and including the Bid Deadline (as defined below). Neither the Debtors nor any of their representatives are obligated to furnish any information relating to the Property to any person other than to Qualifying Bidders.

6. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, attorneys, or other professionals are responsible for, nor shall they bear liability with respect to, any information obtained by Potential Bidders in connection with the sale of the Property.

7. The Debtors have designated Evercore Group L.L.C, to coordinate their response to all reasonable requests for additional information and due diligence from Qualifying Bidders. Contact information for Evercore Group L.L.C. is as follows:

Evercore Group L.L.C.
Attn: Steven T. Becker
909 Fannin Street
Suite 1700
Houston, TX 77010
Telephone: 713-427-5702
Email: steven.becker@evercore.com

8. Each Qualifying Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making a bid; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and the Property in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Property, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures.

9. The Debtors reserve the right to refuse any Potential Bidder or Qualifying Bidder access to due diligence materials if such Potential Bidder's or Qualifying Bidder's access is determined to be harmful to the Debtors' estates.

### C.    Phase I: Non-Binding Indications of Interest

10.    Qualifying Bidders must submit non-binding indications of interest (an "Indication of Interest") for the purchase of all or substantially all of the Property by no later than 5:00 p.m. (prevailing Eastern Time) on December 3, 2015 (the "Phase I Indication of Interest Deadline").  An Indication of Interest must be a written proposal that includes:

- the proposed purchase price or price range for such Property;

- the sources of financing of the purchase price and the requisite deposit;

- any anticipated regulatory approvals required to close the transaction and the anticipated time frame and any anticipated impediments for obtaining such approvals;

- the nature and extent of additional due diligence the Qualifying Bidder wishes to conduct and the date by which such due diligence will be completed; and

- any additional information reasonably requested by the Debtors regarding such Qualifying Bidder, its proposal and its operational and financial ability to consummate such proposal.

11.    Each Indication of Interest shall be submitted via written or electronic copy to the following parties (each a "Notice Party" and collectively, the "Notice Parties"): (i) Parallel Energy LP - U.S. Operating Office, Suite 200, 1323 East 71 Street, Tulsa, OK 74136; Richard N. Miller (rick.miller@parallelenergy.ca) ; (ii) Thompson & Knight LLP, One Arts Plaza, 1722 Routh Street, Suite 1500, Dallas, TX 75201, Attn: David M. Bennett (david.bennett@tklaw.com), counsel to the Debtors; (iii) Blakes, Cassels & Graydon LLP, 855 – 2nd Street S.W., Suite 3500, Bankers Hall East Tower, Calgary, Alberta T2P 4J8, Attn: Kelly Bourassa (kelly.bourassa@blakes.com) and Latham & Watkins LLP, 885 Third Avenue, New York NY 10022, Attn: Mitchell Seider (mitchell.seider@lw.com), co-counsel to Canadian Imperial Bank of Commerce; (iv) Winstead PC, 500 Winstead Building, 2728 North Harwood Street, Dallas, TX 75201, Attn: Sargon Daniel (sdaniel@winstead.com); (v) Evercore Group L.L.C., 909 Fannin Street, Suite 1700, Houston, TX 77010, Attn: Steven Becker (steven.becker@evercore.com); (vi) The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and (vii) Counsel to any official creditors' committee appointed in these Chapter 11 Cases.

12.    The Debtors or their agents shall publish Notice of the Auction in the *Tulsa World* and the Southwest Edition of the *Wall Street Journal*, and on the Debtors' website maintained by its noticing agent.

13.      If a Qualifying Bidder has submitted an Indication of Interest, such Qualifying Bidder must submit a Phase II binding bid for the purchase of all or substantially all of the Property pursuant to Section D.

**D.      Phase II: Binding Bid Requirements**

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder no later than the Bid Deadline (as defined below) that:

- states such Qualifying Bidder offers to purchase all or substantially all of the Property upon the terms and conditions substantially as set forth in the Purchase and Sale Agreement or pursuant to an alternative structure the Debtors, the Administrative Agent, and the Required Consenting Lenders, in their respective reasonable discretion, determine is no less favorable than the terms and conditions of the Purchase and Sale Agreement;

- is accompanied by a duly executed purchase agreement (the "Modified Purchase and Sale Agreement") and a marked Modified Purchase and Sale Agreement, reflecting variations from the Purchase and Sale Agreement executed by the Proposed Purchaser;

- states such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified Purchase and Sale Agreement and provides written evidence in support thereof;

- states such Qualifying Bidder's offer is irrevocable until the closing of the Sale;

- contains such financial and other information to allow the Debtors, the Administrative Agent, and the Required Consenting Lenders to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase and Sale Agreement, including, without limitation, such financial and other information setting forth adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") in a form requested by the Debtors to allow the Debtors to serve, within two (2) business days after such receipt, such information on counter-parties to any contracts or leases being assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

- identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

- does not request or entitle such Qualifying Bidder to any break-up fee, expense reimbursement, or similar type of payment;

- fully discloses the identity of each entity that will be bidding in the Sale or otherwise participating in connection with such bid, and the complete terms of any such participation;

- is likely to result in a value to the Debtors' estates in the Debtors' business judgment that is more than the aggregate of the value of the sum of: (i) the Purchase Price, as identified in the Purchase and Sale Agreement; plus (ii) the Buyer's Assumed Obligations, as identified in the Purchase and Sale Agreement; plus (iii) the sum of the Break-Up Fee and Expense Reimbursement; plus (iv) $375,000;

- (i) does not contain any financing or diligence contingencies of any kind; and (ii) contains evidence that the Qualifying Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtors, the Administrative Agent, and the Required Consenting Lenders, in their respective reasonable discretion;

- includes evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery and consummation of the Modified Purchase and Sale Agreement; and

- provides a purchase deposit equal to ten percent (10%) of the cash portion of the purchase price contained in the Modified Purchase and Sale Agreement (each Qualifying Bidder's deposit, a " Bid Deposit").

14.    A competing bid satisfying all the above requirements shall constitute a Qualifying Bid. The Debtors, in consultation with the Administrative Agent and the Required Consenting Lenders, reserve the right to exercise their business judgment with respect to each bid and reject any bid if such bid is on terms more burdensome or conditional than the terms of the Purchase and Sale Agreement.

**E.**    **Bid Deadline**

15.    A Qualifying Bidder that desires to make a Phase II binding bid, other than the Proposed Purchaser, shall deliver a written or electronic copy of its bid to the

Notice Parties so as to be actually received by a date no later than December 22, 2015 (the "Bid Deadline"), unless such date is extended by the Debtors, with the consent of the Administrative Agent, the Required Consenting Lenders, and the Proposed Purchaser, each in their reasonable discretion.

**F.**     **Evaluation of Qualifying Bids**

16.     The Debtors, in consultation with the Administrative Agent and the Required Consenting Lenders, shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by a date no later than two (2) business days prior to the Auction Date. Prior to the Auction (as defined below), the Debtors, employing their business judgment, and in consultation with the Administrative Agent and the Required Consenting Lenders, shall determine which of the Qualifying Bids is likely to be the highest or best.

**G.**     **No Additional Qualifying Bids**

17.     If no timely, conforming Qualifying Bid, other than the Qualifying Bid submitted by the Proposed Purchaser, is submitted by the Bid Deadline, the Debtors shall not hold an Auction and instead shall request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the Purchase and Sale Agreement with the Proposed Purchaser.

**H.**     **Auction**

18.     In the event that the Debtors timely receive a Qualifying Bid in addition to the Qualifying Bid submitted by the Proposed Purchaser, the Debtors shall conduct an auction (the "Auction") no later than January 6, 2016 (the "Auction Date"), unless such date is extended by the Debtors, the Administrative Agent, and the Required Consenting Lenders, in their respective sole discretion.  The Auction shall be conducted at the offices of Thompson & Knight LLP, One Arts Plaza, 1722 Routh Street, Suite 1500, Dallas, TX 75201 (the "Auction Site") or such other place as the Debtors shall notify all Qualifying Bidders who have submitted Qualifying Bids and expressed their intent to participate in the Auction as set forth above.   The Auction shall be conducted according to the following procedures:

- only the Proposed Purchaser and the other Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

- the Proposed Purchaser and the other Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

- bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

- Qualifying Bidders may then submit successive bids in increments of at least $375,000 higher than the bid at which the Auction

commenced and then continue in minimum increments of at least $375,000 higher than the previous bid; provided that the Debtors shall retain the right to modify the bid increment requirements at the Auction;

- Any bids made by the Proposed Purchaser at the Auction shall include a credit in the amount of the Break-Up Fee and Expense Reimbursement.

- Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the Purchase and Sale Agreement or Modified Purchase and Sale Agreement at the Auction, provided that any such modifications to the Purchase and Sale Agreement or Modified Purchase and Sale Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than the terms of the Purchase and Sale Agreement, as determined by the Debtors, in consultation with the Administrative Agent and the Required Consenting Lenders;

- the Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional bid with full knowledge of the then-existing highest bid or bids and the Auction shall continue until there is only one bid that the Debtors determine in their business judgment, after consultation with the Administrative Agent and the Required Consenting Lenders, is the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid"). In making this decision, the Debtors, in consultation with the Administrative Agent and the Required Consenting Lenders, shall consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Purchase and Sale Agreement requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting the Prevailing Bid shall become the "Prevailing Purchaser," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Purchase and Sale Agreement or Modified Purchase and Sale Agreement; and

- within two (2) Business Days after the conclusion of the Auction, the Prevailing Purchaser shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made;

- each Qualifying Bidder participating in the Auction shall confirm that it has not engaged in any collusion with respect to the bidding.

- all parties-in-interest in the Debtors' cases and Qualifying Bidders may attend the Auction as long as such parties provide Debtors' counsel with written notice at least three (3) business days before Auction. The notice must include the name of the individuals who will represent such party's interest at the Auction. The Debtors reserve the right in their reasonable discretion to exclude a party-in-interest from the Auction.

19.     The Debtors, after consultation with the Administrative Agent and the Required Consenting Lenders, may employ and announce at the Auction additional procedural rules reasonable under the circumstances for conducting the Auction, provided that such rules are not inconsistent with these Bid Procedures, the Bankruptcy Code or any Bankruptcy Court order entered in connection herewith. For the purpose of determining the Prevailing Bid, the Debtors shall exercise their business judgment in consultation with their legal and financial advisors.

## I.     Sale Hearing

20.     The Prevailing Bid (or the Purchase and Sale Agreement if no Qualifying Bid other than that of the Proposed Purchaser is received) will be subject to approval by the Bankruptcy Court. After the conclusion of the Auction, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") to approve the Sale. At the Sale Hearing, the Debtors will seek entry of an order substantially in the form attached as **Exhibit B** to the Motion (the "Sale Order") authorizing and approving the Sale to the Prevailing Purchaser(s), as determined by the Debtors in accordance with the Bid Procedures, pursuant to the terms and conditions set forth in the Purchase and Sale Agreement or in any Modified Purchase and Sale Agreement submitted by the Prevailing Purchaser. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court. The Debtors' presentation of the Prevailing Bid to the Bankruptcy Court for approval does not constitute Debtors' acceptance of such Prevailing Bid. The Debtors will be deemed to have accepted the Prevailing Bid upon the Bankruptcy Court's approval of the Prevailing Bid at the Sale Hearing.

## J.     Backup Bidder

21.     Following the approval of the Sale at the Sale Hearing, if the Debtors fail to consummate such approved Sale with the Prevailing Purchaser, the Debtors shall, subject to the approval of the Administrative Agent and the Required Consenting Lenders, deem the next highest or otherwise best Qualifying Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing, the Prevailing Bid, and the Debtors shall be authorized to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the first business day following the consummation of a Sale

of the Property to the Prevailing Purchaser. Notwithstanding the foregoing, Proposed Purchaser has the right in its sole and absolute discretion to withdraw as Back-Up Bidder any time after February 1, 2016.

### K.    Consent to Jurisdiction and Judicial Authority of the Bankruptcy Court To Finally Determine Disputes

22.    The Proposed Purchaser, the Prevailing Purchaser and all Qualifying Bidders shall be deemed to the fullest extent possible to have expressly consented to the authority of the Bankruptcy Court to enter final orders and to exercise its core jurisdiction, and to have waived any right to a jury trial, in connection with any disputes relating to or arising with respect to the Sale, the Auction or concerning the Purchase and Sale Agreement or any Modified Purchase and Sale Agreement, if any, the Sale Order, the Bid Procedures Order or the construction and enforcement of any such document.

### L.    Disposition of Bid Deposits

23.    Bid Deposits shall be held by the Debtors in a segregated account, which account shall be pledged to the Administrative Agent for the benefit of the Secured Parties and which account shall at all times be subject to the perfected lien created by the Interim DIP Order or the Final DIP Order, as applicable, and in addition a deposit account control agreement in form and substance satisfactory to the Administrative Agent. The Bid Deposit of the Prevailing Purchaser shall be applied to the Purchase Price. The Bid Deposit of the Back-up Bidder, if any, shall be held by the Debtors until the later of: (i) two (2) business days after the Closing of the Sale contemplated by the Prevailing Bid, or (ii) _____, 2016 and thereafter returned to the Back-up Bidder. In the event a Sale to the Prevailing Purchaser shall fail to close, then the Bid Deposit of the Back-up Bidder, if any, shall be applied to the Purchase Price. Bid Deposits of all other Qualifying Bidders shall be held by the Debtors until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective Qualifying Bidders. Notwithstanding anything to the contrary herein, the Proposed Purchaser's Performance Deposit shall be paid, held, applied or refunded as applicable pursuant to the terms and conditions of the Purchase and Sale Agreement and the Escrow Agreement as defined therein.

# **Schedule 2**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PARALLEL ENERGY LP, *et al.*[1] | § | Case No. 15-_____ (__) |
| | § | (Joint Administration Requested) |
| Debtors. | § | |
| | § | **Related D.I.:** _____ |

---

## NOTICE OF AUCTION AND SALE HEARING

1.      Parallel Energy LP ("LP") has entered into an agreement (the "Purchase And Sale Agreement") with Scout Energy Group II, LP (the "Proposed Purchaser") to sell substantially all of its assets (the "Property") to the Proposed Purchaser.   The Debtors' ability to close the transactions contemplated by the Purchase and Sale Agreement is subject to higher or better offers and the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      The Debtors are soliciting offers for the Property, and the Bankruptcy Court has entered the *Order Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 and 507 and Fed. R. Bankr. P. 2002, 6004, And 6006 (A) Establishing Bid and Auction Procedures for the Proposed Sale of Substantially All of the Debtors' Assets; (B) Approving the Purchase and Sale Agreement; (C) Approving Related Bid Protections; (D) Scheduling an Auction and a Sale Hearing and Approving Notice Thereof; (E) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned and Notice Thereof; and (F) Granting Related Relief*

---

[1] The Debtors are Parallel Energy LP and Parallel Energy GP LLC (collectively, the "Debtors" ).

(the "Bid Procedures Order") approving auction and sale procedures (the "Bid Procedures") for the Property.[2]

3.      On [____, __] 2015 the Debtors filed the *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 and 507 and Bankruptcy Rules 2002, 6004 and 6006 for (I) Entry of an Order (A) Establishing Bid and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (E) Granting Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the "Sale Motion").[3]

4.      Pursuant to the Sale Motion, the Debtors propose to:  (a) sell the Property to the Proposed Purchaser (or such other party that submits the highest or otherwise best bid at an auction (the "Auction")), free and clear of all liens, claims, or encumbrances thereon, except for certain assumed liabilities and permitted encumbrances specifically described in the Purchase and Sale Agreement; and (b) assume and assign certain executory contracts and unexpired leases of the Debtors to the Proposed Purchaser (or such other party that submits the highest or otherwise best bid at the Auction).

---

[2]   Copies of the Bid Procedures Order, the Bid Procedures, and the Purchase and Sale Agreement are available free of charge at the website of the Debtors' claims and noticing agent, http://cases.primeclerk.com/parallel.

[3] All capitalized terms not herein defined shall have the meanings ascribed to them in the Sale Motion.

5.      The Bid Procedures approved by the Bid Procedures Order describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction.

6.      The Bankruptcy Court has scheduled an auction of the Property for **__:___ __.m. (prevailing Central Time) on [_____ __, 2015])** at the offices of at the offices of Thompson and Knight LLP, One Arts Plaza, 1722 Routh Street, Suite, 1500 Dallas, Texas, 75201-2533.  All interested parties are invited to submit a qualifying bid to purchase the Property.

7.      The Bankruptcy Court has scheduled a hearing for **[__:___ _.m. (prevailing Eastern Time) on _____, 2015]** (the "Sale Hearing") to consider approval of the winning bid and confirm the results of the Auction.  The Sale Hearing will be held before the Honorable [ ], United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, [ ]th Floor, Courtroom [ ], Wilmington, Delaware 19801.

8.      Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Bankruptcy Court by **[_____ __, 2015 by 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").  At the same time, any objector must also serve a copy of the objection, so as to be received by the Sale Objection Deadline, on: (a) the Debtors' proposed counsel, Thompson & Knight LLP, 1722 Routh Street, Suite 1500, Dallas Texas, 75201, (Attn: David M. Bennett); (b) any committee appointed in these Chapter 11 Cases; and (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

9.      All requests for information concerning the Property should be directed toward the Debtors' financial advisor and investment banker, Evercore Group L.L.C, which can be contacted at:

Evercore Group L.L.C,
909 Fannin Street
Suite 1700
Houston, TX 77010
Attn: Steven T. Becker

10.      The Auction or Sale Hearing or both may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the agenda filed by the Debtors with the Bankruptcy Court.

**11.      IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

*[Remainder of page intentionally left blank]*

Dated: November __, 2015
       Wilmington, DE

BAYARD, P.A.

*/s/ Neil Glassman*
Neil B. Glassman (No. 2087)
GianClaudio Finizio (No. 4253)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
E-mail: nglassman@bayardlaw.com
       gfinizio@bayardlaw.com
       emiller@bayardlaw.com

and

THOMPSON & KNIGHT LLP
Demetra L. Liggins (*pro hac vice pending*)
Three Allen Center
333 Clay Street, Suite 3300
Houston, TX 77002
Tel: (713) 951-5884
Fax: (832) 397-8052
E-mail:Demetra.Liggins@tklaw.com

THOMPSON & KNIGHT LLP
David M. Bennett (*pro hac vice pending*)
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201-2533
Tel: (214) 969-1700
Fax: (214) 969-1751
E-mail: David.Bennett@tklaw.com

*Proposed Counsel for the Debtors*

# **Schedule 3**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PARALLEL ENERGY LP, *et al.*[1] | § | Case No. 15-_____ (__) |
| | § | (Joint Administration Requested) |
| Debtors. | § | |
| | § | **Related D.I.:** _____ |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES WHICH MAY BE ASSUMED AND ASSIGNED, PURSUANT
TO SECTION 365 OF THE BANKRUPTCY CODE, IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO**

PLEASE TAKE NOTICE THAT:

1.      On _____, Parallel Energy LP and Parallel Energy GP LLC, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" or "<u>Parallel</u>") filed their *Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, 503 And 507 and Bankruptcy Rules 2002, 6004 and 6006 for (I) Entry of an Order (A) Establishing Bid and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (E) Granting Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the

---

[1] The Debtors are Parallel Energy LP and Parallel Energy GP LLC.

1

"Sale Motion")[2] with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Court").

2.    Pursuant to the Sale Motion, the Debtors seek the entry of an order (a) establishing bidding procedures for the sale of Debtor's assets  (the "Property"); (b) approving proposed bid protections, including a break-up fee and expense reimbursement to Scout Energy Group II, LP (the "Proposed Purchaser"), in accordance with that certain Purchase and Sale Agreement, dated _____ __, 2015 (the "Purchase and Sale Agreement") for the purchase of the Purchased Property; (c) scheduling an auction (the "Auction") and setting a date and time for a sale hearing (the "Sale Hearing") for the sale of the Property (the "Sale"), and approving the form and manner of notice thereof; (d) establishing procedures (the "Cure Procedures") for the assumption and assignment of contracts ("Contracts") and leases ("Leases"), including notice of proposed cure amounts (the "Cure Amounts"); and (e) granting certain related relief.  By the Motion, the Debtors further request that, at the Sale Hearing, subject to the results of the Auction, the Court enter a sale order (a) approving and authorizing the Sale; and (b) authorizing the assumption and assignment of the Contracts and Leases.

3.    In accordance with the Cure Procedures, the Debtors are delivering this notice (the "Cure Notice") identifying (a) those Contracts and Leases which may be assumed and assigned to the Purchaser, its designee(s) or such other Winning Bidder, on the Closing Date in connection with the Sale of the Purchased Property and in accordance with the procedures proposed in the Motion and (b) the proposed cure amount (the "Cure Amount") for each Contract and Lease identified on the Cure Notice.

---

[2] All capitalized terms not herein defined shall have the meanings ascribed to them in the Sale Motion.

4.      Adequate assurance information for the Purchaser (the "<u>Proposed Purchaser Adequate Assurance Information</u>") is available by contacting counsel to the Purchaser at:

> Winstead PC,
> 500 Winstead Building,
> 2728 N. Harwood Street,
> Dallas, Texas 75201
> Attn: Eli Columbus

5.      You have been identified as a party to a Contract or Lease that the Debtors may seek to assume and/or assign.  The Contract or Lease with respect to which you have been identified as a non-Debtor counterparty, and the corresponding proposed Cure Amount, if any, has been set forth on **Exhibit A** attached hereto.  The Debtors' records reflect that all post-petition amounts owing under your Contract or Lease have been paid and will continue to be paid until the assumption and assignment or rejection of the Contract or Lease, and that other than the Cure Amount, there are no other defaults under the Contract or Lease.

6.      Objections, if any, to the proposed Cure Amount or the Proposed Purchaser Adequate Assurance Information must be made in writing, filed with the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served so as to be received by the parties listed below on or before **4:00 p.m. (prevailing Eastern Time) on _____ __, 2015** (the "<u>Cure Objection Deadline</u>").  Service should be made by mail to: Debtors' counsel, (a) Thompson & Knight LLP, 1722 Routh Street, Suite 1500, Dallas, TX 75201 (Attn: David M. Bennett, Esq.); and (b) Bayard P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE  19801 (Attn:  Neil B. Glassman);  Debtors, Parallel Energy LP. Suite 840, 517 10th Avenue SW Calgary, Alberta T2R 0A8 (Attn: Richard N.

Miller); Counsel to the Proposed Purchaser, Winstead PC, 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201(Attn: Eli Columbus); Counsel to Canadian Imperial Bank of Commerce, the Debtors' post-petition lender, Latham & Watkins LLP, 885 Third Avenue, New York, New York, 10022 (Attn: Mitchell Seider); Counsel to any official creditors' committee appointed in these Chapter 11 Cases; Evercore Group L.L.C, proposed financial advisor and investment banker to the Debtors, 909 Fannin Street Suite 1700 Houston, TX 77010 (Attn: Steven T. Becker); and  The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801. The objection must set forth (a) the basis for the objection, (b) the exact amount the party asserts as the Cure Amount and (c) sufficient documentation to support the Cure Amount alleged.

7.      If an objection is timely filed, a hearing with respect to the objection will be held before The Honorable [_ ] United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on **_____ __, 2015, at _____ (prevailing Eastern Time**) or at a later hearing, as determined by the Debtors in consultation with the Court.  A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtors.

8.      UNLESS YOU FILE AN OBJECTION TO THE PROPOSED CURE AMOUNT SET FORTH ON **EXHIBIT A** HERETO AND SERVE SUCH OBJECTION IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE FOREVER BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON **EXHIBIT A** AND FOREVER BARRED AND

4

ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE DEBTORS, THE WINNING BIDDER OR ANY OTHER ASSIGNEE OF THE RELEVANT CONTRACT OR LEASE.

9.     The presence of a contract or agreement listed on **Exhibit A** attached hereto does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract will be assumed by the Debtors and assigned to the Winning Bidder.   The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on **Exhibit A** attached hereto.

Dated: November __, 2015
      Wilmington, DE

BAYARD, P.A.

*/s/ Neil Glassman*
Neil B. Glassman (No. 2087)
GianClaudio Finizio (No. 4253)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
E-mail: nglassman@bayardlaw.com
       gfinizio@bayardlaw.com
       emiller@bayardlaw.com

and

THOMPSON & KNIGHT LLP
Demetra L. Liggins (*pro hac vice pending*)
Three Allen Center
333 Clay Street, Suite 3300
Houston, TX 77002
Tel: (713) 951-5884
Fax: (832) 397-8052
E-mail:Demetra.Liggins@tklaw.com

THOMPSON & KNIGHT LLP
David M. Bennett (*pro hac vice pending*)
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201-2533
Tel: (214) 969-1700
Fax: (214) 969-1751
E-mail: David.Bennett@tklaw.com

*Proposed Counsel for the Debtors*

5