## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PARALLEL ENERGY LP, *et al.* | Case No. 15-12263 (KG) |
| Debtors.[1] | Joint Administration Pending |
| | **Docket Ref. No. 4** |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,
(II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364
OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY
CLAIMS, (V) MODIFYING AUTOMATIC STAY, AND
(VI) SCHEDULING A FINAL HEARING**

Upon the motion, dated November 9, 2015 (the "DIP Motion"), of the Borrower (as

defined below), and the other debtors and debtors-in-possession (collectively, the "Debtors"), in

the above-referenced chapter 11 cases (the "Cases"), seeking entry of an interim order (this

"Interim Order") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2),

364(c)(3), 364(d)(l), 364(e), 507, and 552 of chapter 11 of title 11 of the United States Code (as

amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), that, among other things:

(i)        authorizes the Debtor designated as "Borrower" under, and as defined in, the DIP

Credit Agreement (as defined below) (the "Borrower") to obtain, and the guarantor (the "DIP

---

[1] The Debtors are Parallel Energy LP and Parallel Energy GP LLC.

Guarantor") under the DIP Loan Documents (as defined below) to unconditionally guaranty the Borrower's obligations in respect of, senior secured priming and superpriority postpetition financing, which if approved on a final basis, would consist of a term loan facility for up to $9,400,000 (the "DIP Facility") pursuant to the terms of (x) this Interim Order, (y) that certain Credit Agreement, dated as of November 9, 2015 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"),[2] by and among the Borrower, Canadian Imperial Bank of Commerce as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and the other financial institutions party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "DIP Secured Parties"), in substantially the form attached to the DIP Motion, and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents"), to: (A) finance operating expenses, specified capital expenditures, restructuring costs, professional fees, and general corporate purposes of the Debtors, (B) grant, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Prepetition Secured Parties (each term as defined below) as described below, (C) pay certain transaction fees and other costs and expenses of administration of the Cases, and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given to such terms in the DIP Credit Agreement. A copy of the DIP Credit Agreement is attached hereto as Exhibit B.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Loan Documents and this Interim Order;

(ii)     approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Credit Agreement and the other DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Interim Order;

(iii)     grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens (as defined in the DIP Credit Agreement) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) and shall be junior solely to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Priority Liens (as defined below) after giving effect to any intercreditor or subordination agreement (including, without limitation: (1) up to $100,000 of cash held in a separate account maintained at Wells Fargo Bank, N.A. (the "MasterCard Program Account") as security for the Debtors' Wells Fargo Obligations (as defined in the Cash Management Motion)[3] incurred in connection with the Debtors' business MasterCard (the "Wells Fargo Business MasterCard") and (2) all funds securing the Existing Letters of Credit (as defined in the DIP Credit Agreement) (the "Existing Letters of Credit Security")) (all such liens, collectively, the "Prepetition Senior

---

[3] The "Cash Management Motion" means the *Motion of the Debtors for Interim and Final Orders Approving (A) Maintenance of Pre-Petition Bank Accounts and Cash Management System and (B) Continued Use of Existing Checks and Business Forms.*

INTERIM ORDER APPROVING MOTION FOR DIP FINANCING AND AUTHORIZATION
TO USE CASH COLLATERAL                                                    PAGE 3

Permitted Encumbrances") and (y) to the DIP Secured Parties, pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired, including any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iv)     authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise, and provides the Prepetition Secured Parties (as defined below) the Prepetition Secured Parties' Adequate Protection (as defined below) as set forth herein;

(v)     vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(vi)     authorizes the Borrower at any time prior to the entry of the Final Order (as defined herein) to borrow under the DIP Facility and use Cash Collateral (as defined below) in an aggregate outstanding principal amount not to exceed $5,400,000, and authorizes the DIP Guarantor to unconditionally guaranty such obligations;

(vii)     schedules a final hearing on the DIP Motion (the "Final Hearing") to consider entry of a final order which grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or the

Court) acceptable to the DIP Agent and "Required Lenders" (as defined in the DIP Credit Agreement) (the "Final Order"); and

(viii)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the DIP Credit Agreement, the *Declaration of Richard N. Miller in Support of Voluntary Petitions and First Day Motions* (the "Miller Declaration"), and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the DIP Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); an Interim Hearing having been held and concluded on November 10, 2015; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.    **Petition Date**.  On November 9, 2015 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "<u>Court</u>").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, the "<u>Committee</u>"), trustee, or examiner has been appointed in the Cases.

B.    **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.    **Restructuring Support Agreement**.  The Debtors, the Prepetition Agent (as defined below), and the Consenting Lenders (as defined in the Restructuring Support Agreement), among others, have entered into that certain Restructuring Support Agreement dated as of November 8, 2015 (the "<u>Restructuring Support Agreement</u>"), pursuant to which the Debtors, the Prepetition Agent, and the Consenting Lenders agreed to support the Debtors'

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.  In the event of any inconsistency between the terms and conditions of any of the DIP Loan Documents, the provisions of any other order entered by this Court in these Chapter 11 Cases, and this Interim Order, the provisions of this Interim Order shall govern and control.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

restructuring as more fully set forth therein.

D.    **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "United States Trustee"), (ii) those entities or individuals included on the Debtors' list of 25 largest unsecured creditors on a consolidated basis, (iii) counsel to the Prepetition Agent (as defined below), (iv) the Prepetition Agent, (v) the DIP Agent, (vi) counsel to the DIP Agent, and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules, and no other notice need be provided for entry of this Interim Order.

E.    **Debtors' Stipulations Regarding the Prepetition Credit Facility**. Without prejudice to the rights of parties in interest solely to the extent set forth in Paragraph 6 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree (Paragraph E hereof shall be referred to herein as the "Debtors' Stipulations") as follows:

(i)    Prepetition Credit Facility. Pursuant to that certain Credit Agreement (as amended, restated or otherwise modified from time to time prior to the Petition Date, the "Prepetition Credit Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or

---

otherwise modified from time to time, the "Prepetition Loan Documents"), among (a) Parallel Energy Commercial Trust, as Canadian Borrower, (b) Parallel Energy Acquisitions LP (now known as Parallel Energy LP), as U.S. Borrower, (c) the financial institutions party thereto as "Syndicated Lenders," as defined therein, (d) Canadian Imperial Bank of Commerce, in its capacity as "Operating Lender," as defined therein (the Syndicated Lenders and the Operating Lender, collectively, the "Prepetition Lenders"), and (e) Canadian Imperial Bank of Commerce, in its capacity as administrative agent (in such capacity, the "Prepetition Agent" and, together with the Prepetition Lenders and any other party to which Prepetition Credit Obligations (as defined below) are owed, the "Prepetition Secured Parties"), the Syndicated Lenders agreed to extend loans and other financial accommodations to the U.S. Borrower under the Syndicated Facility (as defined in the Prepetition Credit Agreement) and the Operating Lender agreed to extend loans and other financial accommodations to the Canadian Borrower under the Operating Facility (as defined in the Prepetition Credit Agreement).  Pursuant to the Prepetition Loan Documents, Debtor Parallel Energy GP unconditionally guaranteed the obligations owed by the U.S. Borrower under the Syndicated Facility and each of the Debtors unconditionally guaranteed the obligations owed by the Canadian Borrower under the Operating Facility.  All obligations of the Debtors arising under the Prepetition Credit Agreement (including, without limitation, any applicable "Secured Obligations," as defined therein) or the other Prepetition Loan Documents shall collectively be referred to herein as the "Prepetition Credit Obligations."

(ii)      Prepetition First Priority Liens and Prepetition Collateral.  Pursuant to the documents evidencing the Security (as defined in the Prepetition Credit Agreement) (as such documents are amended, restated, supplemented, or otherwise modified from time to time

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

prior to the Petition Date, the "Prepetition Collateral Documents"), by and among each of the U.S. Loan Parties (as defined in the Prepetition Credit Agreement) and the Prepetition Agent, each U.S. Loan Party granted to the Prepetition Agent, for the benefit of itself and the Prepetition Secured Parties, to secure the Prepetition Credit Obligations, a first priority security interest in and continuing lien (the "Prepetition First Priority Liens") on substantially all of such U.S. Loan Party's assets and properties (which, for the avoidance of doubt, includes Cash Collateral, the Pledged Accounts (as defined in the DIP Credit Agreement), the Wind-Down Account (as defined below), the MasterCard Program Account, and all right, title, and interest of the Borrower and the DIP Guarantor in and to such accounts, and the proceeds and products thereof) and all other proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All "Collateral" as defined in the Prepetition Credit Agreement granted or pledged by such U.S. Loan Parties pursuant to any Prepetition Collateral Document or any other Prepetition Loan Document shall collectively be referred to herein as the "Prepetition Collateral." As of the Petition Date, (I) the Prepetition First Priority Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are under this Interim Order to be subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) the Prepetition Senior Permitted Encumbrances (as defined below), and (II) (w) the Prepetition Credit Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Credit Obligations exist, and (y) no portion of the Prepetition Credit Obligations or any payments made to any or all of the Prepetition Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii) <u>Amounts Owed under Prepetition Loan Documents</u>.  As of the Petition Date, (a) the applicable Debtors owed the Prepetition Secured Parties, pursuant to the Prepetition Loan Documents, without defense, counterclaim, or offset of any kind, in respect of loans made and other financial accommodations made by the Prepetition Secured Parties, an aggregate principal amount of not less than $153,500,000 with respect to the Syndicated Facility (as defined in the Prepetition Credit Agreement) and (b) the applicable Debtors owed the Operating Lender, pursuant to the Prepetition Loan Documents, without defense, counterclaim, or offset of any kind, in respect of loans made and other financial accommodations made by the Operating Lender, an aggregate principal amount of not less than $9,989,742 with respect to the Operating Facility (as defined in the Prepetition Credit Agreement), *plus*, in the case of both (a) and (b) above, all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents), and other amounts now or hereafter due under the Prepetition Credit Agreement and the other Prepetition Loan Documents.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

(iv)     Release of Claims.  Subject to the reservation of rights set forth in Paragraph 6 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties and their respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees and other representatives (all of the foregoing, collectively, the "Prepetition Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including, without limitation, causes of action in the nature of "lender liability"), defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Credit Obligations, the Prepetition First Priority Liens, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of  the Debtors, on the other hand, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Credit Obligations or any payments made on account of the Prepetition Credit Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition First Priority Liens securing the Prepetition Credit Obligations.

F.        **Findings Regarding the DIP Facility**.

(i)     Need for Postpetition Financing.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors,

suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operation needs, to complete the Debtors' sale process and to otherwise preserve the enterprise value of the Debtors' estates. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to otherwise preserve the enterprise value of the Debtors and their estates. Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

(ii)    No Credit Available on More Favorable Terms. As set forth in the DIP Motion and in the Miller Declaration in support thereof, the Debtors have determined, at the time hereof, that no acceptable financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Interim Order is available. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit on terms acceptable to the Debtors allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Superpriority Claims (each as defined below), (b) allowing the DIP Secured Parties to provide the loans and other financial accommodations under the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (a) and (b) above, including, without

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

limitation, the DIP Liens and the DIP Superpriority Claims, collectively, the "DIP Protections"), and (c) providing the Prepetition Secured Parties the adequate protection more fully described in Paragraphs 4 and 5 below.

G.    **Interim Financing**.   During the Interim Period (as defined below), the DIP Agent, the other DIP Secured Parties, and, as applicable, the Prepetition Secured Parties, are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, as applicable, subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Loan Documents, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens, the DIP Superpriority Claims, and the other protections granted pursuant to this Interim Order and the DIP Loan Documents with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code or this Interim Order.   Without limiting the foregoing, any advances made to the Debtors and Cash Collateral use by the Debtors under the DIP Loan Documents and this Interim Order during the Interim Period shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code.   The DIP Agent, the other DIP Secured Parties and the Prepetition Secured Parties have each acted in good faith in, as applicable, negotiating, consenting to, and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Interim Order and the DIP Loan Documents, and the reliance by the DIP Agent, the other DIP Secured Parties and the Prepetition

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Secured Parties on the assurances referred to above is in good faith.

H.         **Adequate Protection for Prepetition Secured Parties**.  The Prepetition

Secured Parties have negotiated in good faith regarding the Debtors' use of the Prepetition

Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and

continued operation of their businesses.  The Prepetition Secured Parties have agreed to permit

the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Interim

Period, subject to the terms and conditions set forth herein, including the protections afforded a

party acting in "good faith" under section 364(e) of the Bankruptcy Code.  In addition, the DIP

Facility contemplated hereby provides for the priming of the Prepetition Liens pursuant to

section 364(d) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to the

adequate protection as set forth herein pursuant to sections 361, 362, 363, and 364 of the

Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court at the

Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash

Collateral, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors'

prudent exercise of their business judgment, and constitute reasonably equivalent value and fair

consideration for the consent of the Prepetition Secured Parties.

I.         **Section 552**.  In light of the subordination of their Liens and superpriority

administrative claims to (i) the Carve-Out (as defined below) in the case of the DIP Secured

Parties, and (ii) the Carve-Out, the DIP Liens and the Prepetition Adequate Protection Liens in

the case of the Prepetition Secured Parties, each of the DIP Secured Parties and the Prepetition

Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy

Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not

---

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

apply.

J.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Interim Order.

(ii)    The terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Interim Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.    Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)    The DIP Facility, the DIP Loan Documents and the Prepetition Secured Parties' Adequate Protection (as defined below) were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, respectively, with the assistance and counsel of their respective advisors, and all of the DIP Obligations and Prepetition Secured Parties' Adequate Protection (as defined below) shall be deemed to have been extended by the DIP Secured Parties and their affiliates and consented to by the requisite Prepetition Secured Parties for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code or this Interim Order, and the DIP Liens, the DIP Superpriority Claims (as defined below), the other DIP Protections and the Prepetition Secured Parties' Adequate Protection (as defined below) shall be entitled to the full

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

protection of section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified, on appeal or otherwise.

K.      **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to preserve the enterprise value of the Debtors and their estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the Debtor's DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Prepetition Agent (on behalf of the Prepetition Secured Parties), and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Motion Granted**.  The DIP Motion is hereby granted.  Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      **DIP Loan Documents and DIP Protections**.

(a)      Approval of DIP Loan Documents.  The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Documents and this Interim Order, to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents which may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the DIP Loan Documents. The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation, all closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect. Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)     <u>DIP Obligations</u>. For purposes of this Interim Order, the term "<u>DIP Obligations</u>" shall mean all amounts and other obligations and liabilities owing by the respective Debtors under the DIP Credit Agreement and other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement) and shall include, without limitation,

---

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

the principal of, interest on, fees, costs, expenses, and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise.

(c)    <u>Authorization to Incur DIP Obligations</u>.  To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, or (ii) the Cash Collateral Termination Date, in each case unless extended by written agreement of the DIP Agent and the Prepetition Agent (the period from the entry of this Interim Order through and including such earliest date, the "<u>Interim Period</u>"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Budget Covenants as defined and contained in Paragraph 2(e) below, the Borrower is hereby authorized to use Cash Collateral and borrow under the DIP Facility in an aggregate outstanding principal amount for all such borrowings and Cash Collateral usage not to exceed $5,400,000 under the DIP Facility (following the entry of the Final Order, the Borrower's authority to incur further DIP Obligations, if any, and use further Cash Collateral will be governed by the terms of such Final Order).  All DIP Obligations shall be unconditionally guaranteed by the DIP Guarantor, as further provided in the DIP Loan Documents.  To the extent a Final Order is entered, the Debtors shall, subject to the terms of the DIP Loan Documents and the Final Order, be entitled to borrow all amounts under the DIP Loan Documents to fund the Debtors' working capital and other general corporate needs and pay such other amounts required

518185.000003 16322558.3
NY\7357640.11
01:17948406.2

or allowed to be paid pursuant to the DIP Loan Documents, the Final Order, and any other orders of this Court.

(d)    Budget.    Attached hereto as Exhibit A is a rolling 13-week cash flow budget (the "Initial Approved Budget") which reflects on a line-item basis the Debtors' (i) weekly projected cash receipts, (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases, capital expenditures, asset sales, and estimated fees and expenses of the DIP and Prepetition Agent (including counsel and financial advisors therefor), and any other fees and expenses relating to the DIP Facility), (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand (collectively, "Aggregate Liquidity"), and (iv) the weekly outstanding principal balance of the loan made under the DIP Facility (labeled as "Proposed DIP Facility" in the Approved Budget (as defined below)).    Commencing on the first Wednesday following the Petition Date and continuing every Wednesday thereafter (or if such Wednesday is not a Business Day, the following Business Day) (i.e., every week), the Debtors shall prepare and deliver simultaneously to the DIP Agent and the Prepetition Agent: (i) an updated "rolling" 13-week budget, which, once approved in writing by the DIP Agent and the Required Lenders, in their respective sole discretion, shall supplement and replace the Approved Budget or Supplemental Approved Budget, as applicable, then in effect (each such updated budget that has been approved in writing by the DIP Agent and the Required Lenders, a "Supplemental Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court; provided, however, that the DIP Agent, at the direction of the Required Lenders shall have two (2) Business Days to approve each updated "rolling budget" (any such party that fails to timely provide the Debtors and each of the other aforementioned

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

parties written notice of any objection to such updated "rolling budget" shall be deemed to have approved such updated "rolling budget"); provided that any portion of the updated "rolling budget" that relates to periods covered by a previous Initial Approved Budget or Supplemental Approved Budget, as applicable, shall automatically be deemed approved to the extent that no changes have been made to such Initial Approved Budget or Supplemental Approved Budget, as applicable; provided, further, however, that unless and until the DIP Agent has approved (or be deemed to have approved as provided above) such updated budget, the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect in accordance with this Interim Order, and the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties shall, as applicable, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto, as applicable; and (ii) a Variance Report (as defined in the DIP Credit Agreement), in form acceptable to the DIP Agent and the Required Lenders, setting forth the actual cash receipts and actual expenditures for each line item in the Approved Budget (as defined below) covering each of the previous calendar week and the previous four calendar weeks and comparing the foregoing amounts with the budgeted cash receipts and budgeted expenditures, respectively, set forth in the Approved Budget for such line item during such one week period. The Variance Report shall include an explanation as to any variance identified in such report in accordance with the foregoing that is greater than $5,000 or varies by 10% from the budgeted amount.   Such explanation shall include, among other things, whether such variance is permanent or relates solely to timing and, to the extent related to timing, when such variance is expected to be corrected.   The aggregate, without duplication, of all items in the

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Initial Approved Budget and any Supplemental Approved Budgets shall constitute the "Approved Budget." Notwithstanding anything to the contrary in this Interim Order, the reasonable professional fees, costs and expenses of the DIP Agent's advisors and the Prepetition Agent's advisors (with respect to the Prepetition Agent, during the Interim Period with all future periods being subject to entry of a Final Order), respectively, shall be due, payable and paid in accordance with the terms of this Interim Order notwithstanding any budgeted amounts for such fees, costs and expenses set forth in the Approved Budget.

(e)    Budget Covenants.  The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds in accordance with the specific purposes, and at the specific time periods, set forth in the Approved Budget (and in the case of the costs and expenses of the DIP Agent and Prepetition Agent, in accordance with the DIP Loan Documents and this Interim Order), subject to the following permitted variances, which shall be tested initially on the first Wednesday following the Petition Date (the "First Testing Date") (testing the period from the Petition Date through and including the First Testing Date (such initial testing period, the "First Testing Period")) and continuing on each Wednesday thereafter (or if such Wednesday is not a Business Day, the following Business Day) (each, a "Subsequent Testing Date") (in each case, testing the trailing four week period ending on the Wednesday before the applicable Subsequent Testing Date (each, a "Four Week Testing Period")): (i) the Debtors' total expenditures (excluding any legal or advisory fees incurred on behalf of the DIP Agent and the DIP Lenders paid before October 2, 2015) for the prior four week period shall not have exceeded 110% of the amount of total expenditures for such four week period as set forth in the Approved Budget; (ii) the Debtors' net cash receipts (equal to gross revenue less

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

production tax, royalties, processing costs, oxygen removal fee and NGPL transportation costs), on an aggregate basis, for such four week period were not less than 90% of the aggregate amount of cash receipts included in the Approved Budget for such four week period; (iii) in the event the cash receipts on an aggregate basis for the past four weeks is less than 90% of the Approved Budget for the past four weeks, for reasons outside the control of the Debtors, the cash flow test set forth in clause (ii) above shall not apply and, in the alternative, the average daily barrel of oil equivalent produced during the prior four week period will not be less than 6,350 for the calendar month of October 2015, 6,300 for the calendar month of November 2015, 6,250 for the calendar month of December 2015, 6,200 for the calendar month of January 2016, and 6,200 for the calendar month of February 2016 and for each month thereafter.  The foregoing budget-related covenants are collectively referred to herein as the "Budget Covenants."

(f)    Interest, Fees, Costs and Expenses.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent) and other charges payable under the terms of the DIP Loan Documents.  All such fees, costs, expenses and disbursements, whether incurred, paid or required to be paid prepetition or post-petition, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Agent and/or its professionals as of the Petition Date for payment of such fees, costs, expenses and disbursements may be applied for payment)

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

as contemplated in this Interim Order and the DIP Loan Documents filed with the Court, and shall be non-refundable and not subject to challenge in any respect.

(g)    Use of DIP Facility and Proceeds of DIP Collateral.  The Borrower shall apply the proceeds of all DIP Collateral (as defined below) solely in accordance with this Interim Order and the applicable provisions of the DIP Loan Documents.  For the avoidance of doubt, the Debtors shall, in accordance with the applicable provisions of the DIP Loan Documents, and subject to the Carve-Out, pay, or cause to be paid, (i) all proceeds of any sale of all or a portion of the DIP Collateral outside the ordinary course of business, (ii) all funds released to the Borrower from the Escrow Account (as defined in the DIP Credit Agreement), (iii) all remaining funds in the MasterCard Program Account after Payment In Full of the Wells Fargo Obligations incurred in connection with the Wells Fargo Business MasterCard and (iv) all funds securing the Existing Letters of Credit after such Existing Letters of Credit are released *first* to the DIP Agent for application in accordance with the DIP Loan Documents and this Interim Order until the DIP Obligations are Paid in Full, *second*, to a segregated account held by the DIP Agent (the "Wind-Down Account"), solely in an amount necessary to fund the wind-down of the Debtors' estates and the closure of the Chapter 11 Cases, in accordance with a wind-down budget prepared by the Debtors and acceptable to the DIP Agent and the Required Lenders, in their respective sole discretion; and *third*, to the Prepetition Agent for application in accordance with the DIP Loan Documents and this Interim Order until the Prepetition Credit Obligations are Paid in Full.  Notwithstanding the foregoing, solely in the event of a Topping Sale Transaction (as defined in the Purchase and Sale Agreement (as defined in the Miller Declaration)), prior to any payment or distribution pursuant to the immediately preceding

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

sentence, the Debtors shall pay, or cause to be paid, all proceeds of such Topping Sale Transaction to the DIP Agent for payment of the Break-Up Fee and Expense Reimbursement (each as defined in the Purchase and Sale Agreement) to Scout Energy Group II, LP. Notwithstanding the foregoing, the Debtors shall be permitted to pay all outstanding obligations pursuant to the Approved Budget on the Effective Date of the Sale. Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except (a) with respect to the Prepetition Credit Obligations as set forth in this Interim Order and a Final Order; (b) as provided in the First Day Orders, which First Day Orders shall be in form and substance acceptable to the DIP Agent and the Required Lenders; (c) as provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent and the Required Lenders prior to such motion, order, or request for such relief being filed, including, without limitation, any motions, orders, or requests for relief in connection with any structured dismissal of the Cases; or (d) as otherwise provided in the DIP Credit Agreement.

(h)     _Conditions Precedent._ The DIP Secured Parties and Prepetition Secured Parties each have no obligation to extend credit under the DIP Facility or permit use of any DIP Collateral proceeds, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the requisite DIP Secured Parties and the Prepetition Secured Parties in

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

accordance with the DIP Loan Documents or Prepetition Credit Agreement, as applicable, and this Interim Order.

(i)    <u>DIP Liens.</u> As security for the DIP Obligations, the following security interests and liens, which shall immediately and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Interim Order, are hereby granted by the Debtors to the DIP Agent, for its own benefit and the ratable benefit of the DIP Secured Parties, on all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts (including the Pledged Accounts (as defined in the DIP Credit Agreement), the Wind-Down Account, the MasterCard Program Account, the Existing Letters of Credit Security, and all right, title, and interest of the Borrower and the DIP Guarantor in and to such accounts, and the proceeds and products thereof), documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, Avoidance Actions and proceeds relating thereto (subject to entry of the Final Order), rights under section 506(c) of the Bankruptcy Code (subject to entry of the Final Order), all other Collateral (as defined in the DIP Loan Documents), and all

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created (other than any "Building" (as defined in the applicable Flood Insurance Regulation) or "Manufactured (Mobile) Home" (as defined in the applicable Flood Insurance Regulation) with a fair market value in excess of $50,000 individually or $100,000 in the aggregate), and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, as provided below (all of the foregoing collateral collectively referred to as the "DIP Collateral," and all such Liens granted to the DIP Agent for the benefit of all the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

(I)      pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on all unencumbered DIP Collateral and the Debtors' claims and causes of action under sections 502(d), 544, 545, 547-550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing (collectively, the "Avoidance Actions"), whether received by judgment, settlement, or otherwise;

(II)     pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable junior Lien upon all DIP Collateral that is subject solely to the Prepetition Senior Permitted Encumbrances, other than liens which are expressly stated to be primed by the liens to be granted to the DIP Agent described in clause (III) below; and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to the Adequate Protection Replacement Liens (as defined below) and senior and priming to (x) the Prepetition Liens and (y) any Liens that are junior to the Prepetition Liens and the Adequate Protection Replacement Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens"); provided, however, that the liens described in this subsection (III) shall be junior solely to the Carve-Out and the Prepetition Senior Permitted Encumbrances.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

(j)    <u>DIP Lien Priority</u>.  Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the ratable benefit of the DIP Secured Parties shall in each and every case be first priority senior liens that (i) are subject only to the Prepetition Senior Permitted Encumbrances, and to the extent provided in this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in the immediately preceding sub-clause (i), are senior to all prepetition and postpetition liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Superpriority Claims (as defined below): (A) shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "<u>Successor Case</u>"), and/or upon the dismissal of any of the Cases.

(k)    <u>Enforceable Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors and other parties in interest, in accordance with their terms.  No obligation, payment, transfer, or

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(l)     <u>Superpriority Administrative Claim Status</u>.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out in accordance with this Interim Order, over all administrative expense claims, adequate protection and other diminution claims (including the Prepetition Adequate Protection Superpriority Claims (as defined below)), unsecured claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "<u>DIP Superpriority Claims</u>").  The DIP Superpriority Claims shall, for purposes of section

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  Other than as expressly provided in the DIP Credit Agreement and/or this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code and professional fees of the respective described in Paragraph 4(iii) hereof, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising under the DIP Loan Documents and/or this Interim Order.

3.    **Authorization to Use Cash Collateral and Proceeds of the DIP Facility**. Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Budget Covenants set forth in Paragraph 2(e) hereof, (a) the Debtors are authorized to use proceeds of credit extended under the DIP Facility from and after the Closing Date (as defined in the DIP Credit Agreement), and (b) the Debtors are authorized to use Cash Collateral; provided, however, that each Debtor shall be prohibited from at any time using proceeds of DIP Collateral (including Cash Collateral) and/or advances under the DIP Facility, in each case, except in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents.  To fund the Debtors' working capital and other general corporate needs pending the Final Hearing, in accordance with the terms of this Interim Order, the DIP Loan Documents, and the Approved Budget, the Debtors may request advances and other

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

financial accommodations under the DIP Facility.  The DIP Agent and the other DIP Secured Parties may terminate the applicable Debtors' right to use proceeds of extensions of credit under the DIP Facility, DIP Collateral, Prepetition Collateral, and Cash Collateral without further notice, motion, or application to, order of, or hearing before, the Court, in accordance with Paragraph 15 below, immediately upon notice to such effect by the DIP Agent to the Debtors after the occurrence and during the continuance of any Termination Event.  Upon the occurrence and during the continuance of a Termination Event (subject to Paragraph 15 below), any of the DIP Agent (on behalf of the DIP Secured Parties) and the Prepetition Agent (on behalf of the Prepetition Secured Parties) may terminate the consensual Cash Collateral use arrangement contained herein without further notice, motion, or application to, order of, or hearing before, the Court; provided, that the rights of the DIP Secured Parties and the Prepetition Secured Parties under this Interim Order or otherwise shall not be affected by the waiver of any Termination Event by any other party.  The earliest date upon which the consensual Cash Collateral use arrangement described in this Interim Order is terminated pursuant to this Paragraph 3 shall be referred to herein as the "Cash Collateral Termination Date."

    4.    **Adequate Protection for Prepetition Secured Parties**.  In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition First Priority Liens, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive the following adequate protection (collectively referred to as the "Prepetition Secured Parties' Adequate Protection"):

    (i)    Prepetition Adequate Protection Liens.  To the extent there is a diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

(including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition First Priority Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("Diminution in Prepetition Collateral Value"), the Prepetition Agent, for the benefit of all the Prepetition Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral (such adequate protection replacement liens, the "Prepetition Adequate Protection Liens"), which Prepetition Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Senior Permitted Encumbrances, and the Carve-Out and shall be senior in priority to the Prepetition First Priority Liens. The Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Superpriority Claim (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases.

        (ii)        Prepetition Adequate Protection Superpriority Claims. To the extent

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

of Diminution in Value of the Prepetition Collateral, the Prepetition Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Prepetition Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof; provided, however, that the Prepetition Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Prepetition Adequate Protection Superpriority Claims unless and until (x) all DIP Obligations have been Paid in Full (as defined below). Subject to the relative priorities set forth above, the Prepetition Adequate Protection Superpriority Claims against each Debtor shall be against each Debtor on a joint and several basis. For purposes of this Interim Order, the terms "Paid in Full," "Repaid in Full," "Repay in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations and/or Prepetition Credit Obligations, (i) the indefeasible payment in full in cash of such obligations and (ii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition Loan Documents, as applicable.

(iii)    Interest and Professional Fees. As further adequate protection, and

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

without limiting any rights of the Prepetition Agent and the other Prepetition Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall (i) pay or reimburse in cash the Prepetition Agent for any and all fees, costs, expenses, and charges to the extent, and at the times, payable under the Prepetition Loan Documents, including, without limitation, any unpaid fees, costs and expenses accrued prior to the Petition Date, (ii) five (5) Business Days following the last day of each calendar month commencing after the Closing Date, pay to the Prepetition Agent for prompt distribution to the applicable Prepetition Secured Parties any and all of the interest accruing on the Prepetition Credit Obligations under the Prepetition Credit Agreement at the default rate(s) set forth therein, unless the Prepetition Secured Parties elect to defer all or a portion of such interest by payment of such interest in kind, in which case any such accrued interest shall be added to the principal amount of the Prepetition Credit Obligations on the last day of each calendar month commencing after the Closing Date, and (iii) pay currently all reasonable out-of-pocket fees, costs, and expenses of the Prepetition Agent (including, without limitation, the fees, costs, and expenses of counsel and financial advisors for the Prepetition Agent), in the case of each of sub-clauses (i), (ii), and (iii) above, all whether accrued prepetition or postpetition and whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 20(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court.

(iv)    Consent to Priming and Adequate Protection.    The Prepetition

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Agent, on behalf of the Prepetition Secured Parties, consents to the Prepetition Secured Parties' Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition Agent to the priming of the Prepetition First Priority Liens, the use of Cash Collateral, and the sufficiency of the Prepetition Secured Parties' Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Agent and the Prepetition Lenders in their respective sole discretion) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(v)     Right to Seek Additional Adequate Protection.     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lenders. However, the Prepetition Agent, on behalf of the Prepetition Secured Parties, may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; provided that any such additional or alternative adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Lenders granted under this Interim Order and the DIP Loan Documents.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

5.    **Automatic Postpetition Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Prepetition Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Prepetition Adequate Protection Liens or to entitle the DIP Liens and the Prepetition Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Secured Parties (in the latter case, solely with respect to the Prepetition Adequate Protection Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agent and/or the Prepetition Agent, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Prepetition Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent and the Prepetition Agent may in its discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

officer shall be authorized to file or record such copy of this Interim Order.  Subject to the entry

of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer,

covenant, license, contract, organizational document, or other instrument or agreement that

requires the payment of any fees or obligations to any governmental entity or non-governmental

entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any

fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to

be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect

with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the

proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured

Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in

favor of the Prepetition Secured Parties in accordance with this Interim Order.  To the extent that

the Prepetition Agent is the secured party under any security agreement, mortgage, leasehold

mortgage, landlord waiver, financing statement, or account control agreements, listed as loss

payee under any of the Debtors' insurance policies, or is the secured party under any of the

Prepetition Loan Documents, the DIP Agent shall also be deemed to be the secured party under

such account control agreements, loss payee under the Debtors' insurance policies, and the

secured party under each such Prepetition Loan Document, shall have all rights and powers

attendant to that position (including, without limitation, rights of enforcement), and shall act in

that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP

Secured Parties in accordance with the DIP Loan Documents and second, subsequent to Payment

in Full of all DIP Obligations, for the benefit of the Prepetition Secured Parties.  The Prepetition

Agent shall serve as agent for the DIP Agent for purposes of perfecting its respective Liens on all

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

DIP Collateral that is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

6.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon each other party in interest, including the Committee, unless such Committee or any other party in interest (including any Chapter 11 trustee appointed) other than the Debtors (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), *first*, commences within the earlier of seventy-five (75) calendar days following the Petition Date or sixty (60) days from the date a statutory Committee is formed^(but in no event more than seventy-five (75) calendar days following the Petition Date) (such time period, as the same may be extended in accordance with this Paragraph 6, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Credit Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Credit Obligations or otherwise, including,

---

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Credit Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (clauses (i) and (ii) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action. If a Chapter 7 trustee or a Chapter 11 trustee is appointed during the Challenge Period, the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed, _unless extended by the court for cause._ For the avoidance of doubt, a Challenge must be brought no later than the earlier of seventy-five (75) calendar days following the Petition Date or sixty (60) days following the formation of a statutory Committee, _(but in no event more than seventy-five (75)_ whether brought by a statutory Committee or _calendar days following the Petition Date)_ any other party in interest (other than a Chapter 7 trustee or a Chapter 11 trustee). Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Credit Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code and (iv) the

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted in any such adversary proceeding, contested matter or other action or proceeding, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such adversary proceeding, contested matter, or other action. The Challenge Period may only be extended with the written consent of the Prepetition Agent in its sole discretion. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 6.

7. **Carve-Out**. Subject to the terms and conditions contained in this Paragraph 7, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below) in accordance with the terms of this Interim Order:

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

(i)      Carve-Out.  For purposes of this Interim Order, "Carve-Out" means (a) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a)(6); (b) subject to the terms and conditions of this Interim Order, the unpaid fees, costs, and disbursements of professionals retained by the Debtors in these Cases other than the Debtors' ordinary course professionals (collectively, the "Debtors' Professionals") that are incurred prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), are in accordance with and limited by the Approved Budget, and are allowed either prior to or after the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below) pursuant to an order of the Court under sections 327, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (c) subject to the terms and conditions of this Interim Order, the reasonable unpaid fees, costs, and disbursements of professionals retained by the Committee in these Cases (collectively, the "Committee's Professionals") and all reasonable unpaid out-of-pocket expenses of the members of any Committee ("Committee Members"), in each case that are incurred prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice and in accordance with and limited by the Approved Budget, and that are allowed either prior to or after the delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below) by the Court under sections 328, 330, or 1103 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (d) the reasonable unpaid fees, costs, and disbursements of the Debtors' Professionals that are incurred after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 327, 330 or 363 of the Bankruptcy Code and that are in accordance with the Budget (the "Debtors' Professionals Post-Default

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Carve-Out"); and (e) the reasonable unpaid fees, costs, and disbursements of the Committee Professionals and the reasonable unpaid expenses of Committee Members that are incurred after the delivery of a Carve-Out Trigger Notice, that are allowed by the Court under sections 328, 330 or 1103 of the Bankruptcy Code and that are in accordance with the Budget (the "Committee Post-Default Carve-Out") (clauses (a), (b), (c), (d), and (e), collectively, the "Carve-Out"). The Debtors' Professionals Post-Default Carve-Out and the Committee Post-Default Carve-Out shall not exceed $500,000 in the aggregate (inclusive of any unapplied retainers held by such professionals) (the "Post-Default Carve-Out Cap"). The term "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors' lead counsel, the United States Trustee, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event. Upon the delivery of a Carve-Out Trigger Notice, (A) the Debtors shall immediately fund into the Carve-Out Account (as defined below) an amount equal to the Post-Default Carve-Out Cap, and (B) until the Carve-Out Account (as defined below) has been funded in an additional amount equal to the unpaid fees and expenses that were incurred prior to the delivery of the Carve-Out Trigger Notice in accordance with (b) and (c) above, that have not been disallowed by the Court and for which such Debtors' Professionals or Committee's Professionals have submitted a copy of an application to the Court or monthly fee statement, net proceeds of the DIP Collateral thereafter realized by or remitted to the Prepetition Agent that, but for the Carve-Out, would be utilized by the Prepetition Agent to permanently repay the Prepetition Credit Obligations (x) shall be transferred by the Debtors into a segregated account established by the Debtors (the "Carve-Out Account") and (y) shall not reduce the Prepetition Credit Obligations.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

All amounts deposited in the Carve-Out Account shall continue to be subject to the DIP Liens, the Prepetition Adequate Protection Liens and the Prepetition First Priority Liens such that, upon final payment of all allowed amounts due and owing under the Carve-Out, then any funds remaining in the Carve-Out Account shall be remitted to the DIP Agent or the Prepetition Agent, as applicable, in accordance with this Interim Order, for application in accordance with this Interim Order and the DIP Loan Documents or Prepetition Loan Documents, as applicable.  No amounts set forth in this subparagraph (i) with respect to the Post-Default Carve-Out Cap may be modified without the prior written consent of the DIP Agent and the Prepetition Agent.

(ii)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Debtors' Professionals or Committee's Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate any DIP Secured Party or any Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals or Committee's Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtors' Professionals or Committee's Professionals are higher in fact than the Carve-Out Cap.  The respective Prepetition Secured Parties' liens and claims shall be subject to the Carve-Out as set forth in this Interim Order.  Notwithstanding any provision in this Paragraph 7 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral or proceeds of the DIP Facility shall be utilized for the

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

payment of professional fees and disbursements to the extent restricted under Paragraph 16 hereof. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

(iii) <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay allowed fees of the Debtors' Professionals and the Committee's Professionals (to the extent the fees of the Debtors' Professionals and the Committee's Professionals were incurred in accordance with the Approved Budget), subject to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court. The amounts paid prior to the Carve-Out Trigger Notice shall not reduce the Carve-Out.

8.    **Waiver of 506(c) Claims**. Subject to the entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein) and as a further condition to the Debtors' use of Cash Collateral pursuant to this Interim Order and a Final Order, no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Secured Parties and/or the Prepetition Secured Parties, the Prepetition Collateral, the DIP Collateral and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Agent and the DIP Agent, and no such consent shall be implied from any other

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

action, inaction, or acquiescence of any or all of the Prepetition Secured Parties and the DIP Secured Parties.

9.    **After-Acquired Property**.    Except as otherwise expressly provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

10.    **Protection of DIP Secured Parties' Rights**.

(a)    Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full, there shall not be entered in these proceedings, or in any Successor Cases, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and/or the other DIP Protections granted pursuant to this Interim Order to the DIP Secured Parties, unless such order provides that all DIP Obligations are Paid in Full as part of the proposed credit facility; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Secured Parties and the Prepetition Secured Parties all such information as required or allowed under the DIP Loan Documents or the provisions of this Interim Order, (iii) permit representatives of the DIP Agent and the Prepetition Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

operations, and accounts with their respective officers, employees, and independent public accountants as and to the extent required by the DIP Loan Documents (with the Prepetition Agent being granted the same access and cooperation rights as the DIP Agent for purposes of this subsection (b)), and (iv) permit the DIP Agent and the Prepetition Agent and their respective representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets.

11.    **Proceeds of Subsequent Financing**.    Without limiting the provisions and protections of Paragraph 10 above, if at any time prior to the Payment in Full of all the DIP Obligations (including subsequent to the confirmation of any Chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until Payment in Full of the DIP Obligations.

12.    **Cash Collection**.    From and after the date of the entry of this Interim Order, all cash and Cash Equivalents (as defined in the DIP Credit Agreement) received by any Debtor, including collections and proceeds of any DIP Collateral and Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the Loan Account (as defined in the DIP Credit Agreement) (or in such other accounts as are designated by the DIP Agent from time to time).

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

13.     **Disposition of DIP Collateral**.  Unless the DIP Obligations and the Prepetition Credit Obligations are Paid in Full upon the closing of a sale or other disposition, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) without the prior written consent of the requisite DIP Secured Parties under the DIP Loan Documents and the Prepetition Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition Loan Documents, as applicable, and this Interim Order.

14.     **Termination Events**.  The following shall constitute a termination event under this Interim Order and the DIP Loan Documents unless waived in writing by each of the DIP Agent, the Required Lenders, and the Prepetition Agent (each, a "Termination Event"):

(a)     The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein (a "DIP Default Termination Event").

(b)     Any other breach, default or other violation by any of the Debtors of the terms and provisions of this Interim Order.

(c)     The Debtors' failure to timely and strictly comply with the obligations and deadlines set forth in Exhibit C attached hereto (the "Sale Milestones").

15.     **Rights and Remedies Upon Termination Event**.

(a)     Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Secured Parties to exercise the following remedies immediately upon the occurrence and during the continuance of any Termination Event (as set forth in section

3 of this Interim Order):  (i) terminate the DIP Obligations; (ii) declare the principal amount then outstanding of, and the accrued interest on, the DIP Obligations and all other amounts payable by the Debtors under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall be immediately due and payable without presentment, demand, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral (except as permitted in Paragraph 15(b) below), including Cash Collateral derived solely from the proceeds of DIP Collateral (any such declaration to be made in writing to the Debtors, the Prepetition Agent, the respective lead counsel to any Committee, and the United States Trustee shall be referred to herein as a "Termination Declaration" and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"); (v) reduce any claim to judgment; (vi) take any other action permitted by law; and/or (vii) take any action permitted to be taken by the DIP Loan Documents during the continuance of any Termination Event.

> (b)    Five (5) Business Days following a Termination Declaration Date, the DIP Agent shall be deemed to have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise remedies against the DIP Collateral permitted by applicable nonbankruptcy law.  During the 5 Business Day period after a Termination Declaration Date, the Debtors, the

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

DIP Agent, the Prepetition Agent and any Committee shall be entitled to an emergency hearing before the Court for the sole purpose of contesting whether a Termination Event has occurred and section 105 of the Bankruptcy Code may not be invoked by the Debtors, the Committee, or any other party in interest in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Interim Order or the DIP Loan Documents. Unless during such period the Court determines that a Termination Event has not occurred and/or is not continuing, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such five Business Day period, without further notice or order.  During such five Business Day period, the Debtors may not use Cash Collateral or any amounts under the DIP Credit Facility except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with and otherwise due under the Approved Budget.

(c)    All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties shall be turned over to the DIP Agent for application to the other DIP Obligations under, and in accordance with, the provisions of the DIP Loan Documents until Payment in Full of the DIP Obligations; provided, that in the event of the liquidation of the Debtors' estates after the occurrence and during the continuance of a Termination Event, the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by the DIP Agent subsequent to the date of termination of the DIP Obligations and prior to the distribution of any such Cash Collateral to any other parties in interest.

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

(d)    Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this Paragraph 15(d) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease or license under Bankruptcy Code section 365(a) as a

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 15(d).

(e)    The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Prepetition Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

16.    **Restriction on Use of Proceeds**.    Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) any Committee or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (or to pay any professional fees and disbursements incurred in connection therewith) to investigate or prosecute any litigation or other action in connection with the value of the Prepetition Collateral or the DIP Collateral at any time; and (b) any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including, without limitation, (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the Prepetition Credit Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition First Priority Liens, or the Prepetition Adequate Protection Liens (including, with respect to the Prepetition Secured Parties only, the value of the DIP Collateral); (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition First Priority Liens, the Prepetition Adequate Protection Liens, or the other Prepetition Secured Parties' Adequate Protection; (D) except to contest the occurrence or continuance of any Termination Event as permitted in Paragraph 15, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties' (and, after the Payment in Full of the DIP Obligations, the Prepetition Secured Parties' assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Loan Documents, as

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

applicable, or this Interim Order); and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Loan Documents, as applicable; provided, however, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Committee (to the extent such Committee is appointed) to investigate (but not document suit or otherwise prosecute) the extent, validity, and priority of the Prepetition Credit Obligations, the Prepetition First Priority Liens, or any other claims against the Prepetition Secured Parties so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Agent and the Prepetition Agent, as applicable.

17.    **Proofs of Claim**.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent, for the benefit of itself and the other Prepetition Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as they see

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.

18.    **Preservation of Rights Granted Under the Interim Order**.

(a)    <u>No Non-Consensual Modification or Extension of Interim Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or any of the Prepetition Secured Parties.  In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created hereby.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur, or stay shall affect (i) the validity, priority, or enforceability of any DIP Protections and the Prepetition Secured Parties' Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as the case may be, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity,

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

enforceability and non-avoidability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Prepetition Secured Parties' Adequate Protection.  Notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or Prepetition Secured Parties' Adequate Protection incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent or  the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the DIP Protections and Prepetition Secured Parties' Adequate Protection, as the case may be, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Prepetition Secured Parties' Adequate Protection.

(b)     Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) the DIP Protections and the Prepetition Secured Parties' Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been Paid in Full, the Prepetition Credit Obligations have been Paid in Full (and that all DIP Protections and the Prepetition Secured Parties' Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction,

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' Adequate Protection.

(d)    Survival of Interim Order. The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission. The terms and provisions of this Interim Order, including all of the DIP Protections, the Prepetition Secured Parties' Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Prepetition Secured Parties' Adequate Protection shall continue in these proceedings and in any Successor Cases, and shall maintain their respective priorities as provided by this Interim Order. Subject to the provisions of this Interim Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the DIP Facility pursuant to the Plan or any other Chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming the Plan or any other such Chapter 11

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. **Insurance Policies**. Upon entry of this Interim Order, the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

20. **Other Rights and Obligations**.

(a) Expenses. As provided in the DIP Loan Documents (and without limiting the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable expenses incurred by the DIP Agent (including, without limitation, the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, advisors and auditors engaged by or for the benefit of the DIP Agent and/or its counsel) in connection with the preparation, execution, delivery, and administration of the DIP Loan Documents, this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b) Notice of Professional Fees. Professionals for the DIP Agent and the Prepetition Secured Parties (including, without limitation, professionals engaged by counsel to the DIP Agent or Prepetition Agent, as applicable) (collectively, the "Lender Professionals") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to the Court, United States Trustee, any Committee or any other party in interest absent further

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

court order.  Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as the Court may direct.  The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege.  If the Debtors, United States Trustee, or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, the Debtors, United States Trustee, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses.  Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses which are the subject of such objection.  The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed.  The Debtors shall indemnify the DIP Agent and the other DIP Secured Parties (and other applicable parties) to the extent set forth in the DIP Loan Documents, including, without limitation, as provided in Section 9.05 of the DIP Credit Agreement.  All such unpaid fees, costs, expenses, charges, and indemnities of the DIP Agent

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

that have not been disallowed by this Court on the basis of an objection filed by the United States Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order. Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent or the DIP Lenders in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable.

(c)    <u>Binding Effect</u>. Subject to Paragraph 6 above, the provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; <u>provided</u>, <u>however</u>, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)    <u>No Waiver</u>. Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Loan Documents, or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.    Nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).    Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively.    Except to the extent otherwise expressly provided in this Interim Order, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Secured Loan Documents, applicable law, or equity.

(e)    No Third Party Rights.  Except as explicitly provided for herein or in any DIP Loan Document, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)    No Marshaling.  Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)    Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any non-material provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) changes the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, except as provided herein, approved by this Court. Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition Secured Parties, as applicable, shall be effective unless also consented to in writing by the Prepetition Agent (on behalf of the Prepetition Secured Parties).

(h)    Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(i)    Enforceability.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(j)    Reservation of Rights.  Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties or the Prepetition Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Bankruptcy Court that provides for the sale of all or substantially all of the assets of the Debtors to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

sufficient to Pay in Full the DIP Obligations, the Prepetition Credit Obligations, the Prepetition Secured Parties' Adequate Protection and all of the foregoing are Paid in Full on the closing date of such sale.

(k)    Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

(l)    General Cooperation From Debtors; Access to Information.  Without limiting any of the Debtors' other obligations in this Interim Order or the DIP Loan Documents, each Debtor shall, and shall cause its senior officers, directors and financial advisors to, reasonably cooperate with the DIP Agent, the Prepetition Agent, and their respective advisors and representatives, in furnishing documents and information as and when reasonably requested by such parties regarding the DIP Collateral or the Debtors' financial affairs, finances, financial condition, business, and operations.  Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the DIP Agent, the Prepetition Agent, or their respective financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

21.    **Final Hearing**

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _December 2_ 2015, at ~~9:30~~ 12:00 PM (prevailing Eastern time) at the United States Bankruptcy Court for the District of Delaware.  The ^Debtors will seek a proposed Final Order ~~shall be~~ substantially the same as the Interim Order except that (i) those provisions in the

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification; and (ii) certain provisions of this Interim Order may be modified at or prior to the Final Hearing to address certain objections raised by parties in interest. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    <u>Final Hearing Notice</u>. On or before **Nov. 12**, 2015 the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than **Nov. 30**, 2015 **at 4:00 p.m.** / which objections shall: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware no later than seven (7) business days before the Final Hearing and served upon the following parties so as to be actually received no later than seven (7) business days before the Final Hearing: (a) proposed counsel for the Debtors: Thompson & Knight LLP, 1722 Routh Street, Suite 1500, Dallas, TX 75201 (Attn: David M. Bennett, Esq.; David.Bennett@tklaw.com) and Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801 (Attn: Neil B. Glassman, Esq. and GianClaudio Finizio, Esq.;

518185 000003 16322558.3
NY\7357640.11
01:17948406.2

nglassman@bayardlaw.com, gfinizio@bayardlaw.com); (b) counsel for the DIP Agent: Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834 (Attn: Mitchell A. Seider, Esq. and Annemarie V. Reilly, Esq.; Mitchell.Seider@lw.com, Annemarie.Reilly@lw.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801 (Attn: Michael R. Nestor, Esq. and Kara Hammond Coyle, Esq.; mnestor@ycst.com, kcoyle@ycst.com); and (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey, Esq., Linda.Casey@usdoj.gov).

22.    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated:  November **10**, 2015
       Wilmington, Delaware

                                 KEVIN GROSS
                                 UNITED STATES BANKRUPTCY JUDGE

518185 000003 16322558.3
NY\7357640.11
01:17948406.2